## STATE, FOR USE OF THE BOARD OF WELFARE, *v.* COUNTY COMMISSIONERS FOR ANNE ARUNDEL COUNTY.

[No. 105, October Term, 1933.]

*Decided January 30th, 1934.*

224

The cause was argued before PATTISON, URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*G. C. A. Anderson, Assistant Attorney General,* and *Ridgely P. Melvin,* with whom was *William Preston Lane, Jr., Attorney General,* on the brief, for the appellant.

*Benjamin Michaelson,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

This is the plaintiff's appeal from a judgment of the Circuit Court for Anne Arundel County for $450, the amount of damages awarded to the plaintiff. There are three exceptions in the record. As we are of the opinion that there was error of the trial court embraced in the first of these exceptions, it will be unnecessary to discuss the other two. That exception arose in this manner: There was no evidence offered by the defendant, and, at the close of the case, the plaintiff offered a prayer designated "plaintiff's prayer No. 2," which was a damage prayer. The court refused to grant the prayer as offered, but amended it and granted the prayer as so amended by the court. The exception is to the action of the court in amending plaintiff's prayer No. 2 and granting the prayer as amended.

The suit is that of the State of Maryland, for the use of the Board of Welfare, against the County Commissioners of Anne Arundel County, a body corporate. The declaration contains the common counts for work done and material furnished, and for money paid by the plaintiff for the defendant at their request, and a third count wherein it is alleged: "That one William Rawlings was duly indicted in Anne Arundel County; was duly tried and convicted by the Circuit Court for Anne Arundel County; was duly sentenced by the Circuit Court for Anne Arundel County to suffer death by hanging; that the sheriff of Anne Arundel County, in compliance with and by virtue of the Acts of the General Assembly of Maryland, of 1922, chapter 465, section 6 (article 27, sec. 410, of the Code of Public General Laws of Maryland,

Bagby's Edition, 1924), took the said William Rawlings into his custody, and as soon thereafter as possible, delivered the said William Rawlings to the Warden of the Maryland Penitentiary; that the Warden of the Maryland Penitentiary, in compliance with the Acts of the General Assembly of Maryland, 1922, chapter 465, section 6, aforesaid, placed the said William Rawlings in solitary confinement to await the execution of his sentence; that while in solitary confinement and awaiting the execution of his sentence, the Warden, in accordance with the Acts of the General Assembly of 1922, chapter 465, section 6, aforesaid, deemed the following guards to be necessary: Ambrose Kennedy, 156 days at $1,800 per annum, $769.31; Charles Graham, 156 days at $1,700 per annum, $726.58; Frank J. Saurin, 33½ days at $1,700 per annum, $156.03; Arthur T. Owens, 74½ days at $1,600 per annum, $326.58; Arthur T. Owens, 48 days at $1,700 per annum, $223.56; (total) $2,202.06. That the State Board of Welfare was forced to pay the guards as aforesaid, the sum of $2,202.06; that after the payment of said amount by the State Board of Welfare, a certificate was duly presented by the Warden to the County Commissioners of Anne Arundel County, which body, without legal right or jurisdiction, and in violation of the Acts of the General Assembly of Maryland of 1922, chapter 465, section 6, refused to pay the same."

The plaintiff's prayer No. 2, the damage prayer, prayed the court to instruct the jury: "That if they find for the plaintiff, the measure of damages shall be the amount paid for a day and a night guard over the convict, William Rawlings, during his solitary confinement in the Maryland Penitentiary under sentence of death by the Circuit Court for Anne Arundel County, the *per diem* of each guard to be at the following rate: Ambrose Kennedy, having been employed as a guard at the Maryland Penitentiary for more than ten years, at the rate of $1,800 per annum; Charles Graham and Frank J. Saurin, having been so employed for a period of five years to ten years at the rate of $1,700 per annum;

Arthur T. Owens, having been so employed over a period of two years to five years, at the rate of $1,600 for the former period and at the rate of $1,700 for the latter period."

The prayer as amended and granted by the court is: "The plaintiff prays the Court to instruct the jury that if they find for the plaintiff, the measure of damages shall be the amount paid for a day and a night guard over the convict William Rawlings, during his solitary confinement in the Maryland Penitentiary under sentence of death in the Circuit Court for Anne Arundel County, the *per diem* of each guard to be at such rate as the jury shall find from the evidence is reasonable compensation for such services."

Section 6 of chapter 465 of the Acts of 1922, now codified as section 410 of article 27 of the Code, provides: "Immediately upon sentence of death being pronounced upon any convict by any court of this state, the convict shall be taken into custody by the sheriff of the county or city wherein he was indicted, and held by him under such guard or guards as the sheriff shall determine to be necessary, and as soon thereafter as possible, said convict shall be, by the said sheriff, delivered to the warden of the Maryland Penitentiary, where he shall be placed in solitary confinement under such guard or guards as might be necessary, to await the execution of his sentence by the said warden as aforesaid. All expenses of transportation of said convict to the Maryland Penitentiary, a fee of twenty-five dollars to the spiritual advisor of said convict, the *per diem* of a day and night guard over said convict while in confinement, and a fee of twenty-five dollars to the doctor in attendance at said hanging, shall be paid upon a certificate being presented by the warden aforesaid, after the execution has taken place, containing an itemized statement of said expense, by the order of the county commissioners of the county where the said convict was indicted, or of the Mayor and City Council of Baltimore if indicted in Baltimore City, and it shall be the duty of said county commissioners or Mayor and City Council of Baltimore, as the case may be, to order the immediate payment of said bill."

By chapter 431 of the Acts of 1929, now codified as section 681 A of article 27 and contained in the 1929 Supplement of the Code, it is provided: "That the Board of Welfare shall immediately upon the taking effect of this Act, cause to be made a classification of the guards of the Maryland Penitentiary as may be for the best interest, conduct and management of the institution in conformity with the provisions of this section in respect to the duties to be performed and the salaries to be paid according to the tenure of service. The assistant warden shall be paid a salary of twenty-seven hundred dollars ($2,700.00) annually. The day head guard shall be paid a salary of twenty-two hundred dollars ($2,200.00) annually. The guard that is regularly assigned as steward, shall be paid an annual salary of eighteen hundred dollars ($1,800.00). The first shift night head guard shall receive an annual salary of two thousand dollars ($2,000.00) and the second shift night head guard shall receive an annual salary of nineteen hundred dollars ($1,900.00). The guard assigned as the Bertillion Officer, shall be paid an annual salary of eighteen hundred dollars ($1,800.00). Each of the other guards who shall have been employed as such under two years, shall be paid an annual salary of fifteen hundred dollars ($1,500.00). Each guard who shall have been employed as such, over a period of two years to five years, shall be paid an annual salary of sixteen hundred dollars ($1,600.00). Each guard who has been employed as such for over a period of five years to ten years, shall be paid an annual salary of seventeen hundred dollars ($1,700.00). Each guard who has been employed as such for more than ten years shall be paid an annual salary of eighteen hundred dollars ($1,800.00); provided, however, that each guard who shall be assigned to duty in any of the shops or dormitories for day service, shall receive in addition to the salaries herein set forth, an additional compensation at the rate of two hundred dollars ($200.00) annually, said salaries to be paid in equal semi-monthly installments."

The plaintiff offered evidence to prove, and there is no

evidence to the contrary, that William Rawlings was indicted, convicted and sentenced to be hanged by the Circuit Court for Anne Arundel County; that after such sentence he was, on November 14th, 1930, delivered by the sheriff of Anne Arundel County to the warden of the Maryland Penitentiary, and placed by said warden in solitary confinement awaiting execution, where he remained from November 14th, 1930, to July 20th, 1931, upon which latter date his sentence to be hanged was commuted to life imprisonment by the Governor; that, in compliance with section 410 of article 27, a day and night guard was required to be and was in attendance upon William Rawlings while so confined in the death cell; that immediately upon his commutation of sentence, he was removed from the death cell, and the attendance of the guards, theretofore required, ceased; that after the commutation of sentence, the warden presented to the County Commissioners of Anne Arundel County a certificate containing an itemized statement of the expenses occasioned by the requirement of the statute as to guards while William Rawlings was in the death cell awaiting execution, the *per diem* being calculated on the annual salary fixed by statute, as set out in article 27, section 681A, and there being no dispute as to the correctness of this calculation. The record further shows, without dispute, that the guards named in the certificate actually performed the duties, and that their annual salaries, upon which the *per diem* was based, are the salaries which the statute requires to be paid to guards according to their length of service, which length of service was also proved.

It therefore appears that the measure of damages set out in the plaintiff's second prayer as originally offered was correct, such damage being in strict conformity with that prescribed and directed by statute. This being true, the amendment of the plaintiff's second prayer made by the court, and the granting thereof as amended, fixing the measure of damages as being what the jury might find from the evidence the services of the guards were reasonably worth, was clearly erroneous. The Legislature having fixed a defi-

nite and certain measure of damages, the court is not at liberty to instruct the jury that they can find any other or different damages in the event they find for the plaintiff.

Prior to the Acts of 1922, ch. 465, sec. 6, all hangings where the death sentence was imposed were executed in the several counties or Baltimore City, as the case might be, where the crime was committed, and, of course, at the expense of the respective counties or Baltimore City. In 1922, however, the Legislature determined that all executions of the death sentence should be carried out at a central place, namely, within the walls of the penitentiary in Baltimore City; and provided that certain designated and specifically set out expenses incident to the confinement and prior to the execution, and certain others, should be paid by the county or city wherein the indictment for the crime was found, this expense to be paid by the county commissioners or the Mayor and City Council of Baltimore, as the case might be, upon the presentation of an itemized statement by the warden of the Maryland Penitentiary to such board of county commissioners or Mayor and City Council of Baltimore, after the execution has taken place.

It is suggested by the appellee that because, in the case now being considered, there was no execution, the warden of the Maryland Penitentiary was not authorized to present to the County Commissioners of Anne Arundel County any such itemized statement, and not being so authorized, the county commissioners were not bound to pay the same. By the granting of the plaintiff's first prayer, the jury were instructed that they might find a verdict for the plaintiff; and with this ruling, we are in accord. Any different view would be the result of a strained and unnatural construction, and obviously was not the purpose or intent of the Legislature, such an intent being clearly that the county commissioners should pay the designated cost incident to the detention of the sentenced criminal pending his execution, and applies in the case of commutation of sentence by the Governor, or in case of death of the convict other than by execution, as well

as those wherein the sentence is fully executed by hanging. The language of the statute is particularly directed to cases where the usual procedure incident to sentence to death by hanging is had, when it provides that the itemized statement required to be made by the warden be made after the execution.' This designation of the time at which such statement shall be rendered must be held directory and not mandatory, as in our judgment it could not be successfully contended that, if it were shown that the statement was made one minute prior to the execution, the county commissioners would not be bound to pay, whereas if made one minute after execution, they would be. It sometimes occurs that persons sentenced to be hanged are confined in the death cell for comparatively long periods, and it may be for reasons over which the trial court or the county commissioners of that county have no control; and under such circumstances it would be unfair to require such payments to be made by the county commissioners or the Mayor and City Council of Baltimore respectively. This, however, is a legislative matter with which this court has no concern, and which, as we understand, the Legislature has corrected at the extra session thereof just closed, in which it was enacted that the entire expense in such cases as that now before us is required to be paid by the State.

It will thus be seen from what has been said that the plaintiff's damage prayer, as originally offered, was the correct and only measure of damages, and there was error committed by the court in amending this prayer and granting it as thus amended.

*Judgment reversed, and new trial awarded, with costs to the appellant...*